## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| MICHAEL RACHAU, individually and all others similarly situated, | |
| Plaintiff, | Civil Action No. _____ |
| v. | **JURY TRIAL DEMANDED** |
| CF MEDICAL, LLC, | |
| Defendant. | |

## CLASS ACTION COMPLAINT

Plaintiff Michael Rachau ("Plaintiff"), individually and on behalf of all others similarly situated, brings this class action against Defendant CF Medical, LLC ("Defendant") and alleges upon personal knowledge as to his own actions, and upon information and belief as to all other matters, as follows:

### NATURE OF THE ACTION

1.    This action arises out of Defendant's unauthorized disclosure of the confidential personal information, Personally Identifying Information[1] ("PII") of Plaintiff and approximately 626,396 proposed Class Members via a February 2024

---

[1] The Federal Trade Commission defines "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, Social Security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number." 17 C.F.R. § 248.201(b)(8).

cyber-attack and Defendant's failure to reasonably mitigate against the imminently foreseeable risk of such an attack. Because of Defendant's failures to implement reasonable, industry standard cybersecurity safeguards, Plaintiff and the Proposed Class Members have and will continue to suffer harm.[2]

2.      Because of Defendant's failures, the sensitive PII of Plaintiff and the proposed class were disclosed to cybercriminals, including Plaintiff's and Class Members' names and Social Security numbers (the "Data Breach").[3]

3.      On September 26, 2024, Defendant notified Plaintiff that his information was affected by the Data Breach. Defendant noted that unauthorized third parties gained access to a debt collection agency's information systems, who had Plaintiff's information because of its relationship with Defendant.

4.      According to Defendant, the cybercriminals infiltrated the information systems at least between February 14, 2024, and February 26, 2024, when the debt collection company finally realized what was happening.

5.      Based on this timeline, it is apparently that the debt collection company lacked appropriate and reasonable cybersecurity safeguards, including reasonable logging, monitoring, and alerting tools to identify malicious activity in a timely

---

[2] Dwaipayan Roy, *Comcast Says Data of 230,000 Customers Stolen in Ransomware Attack* (Oct. 7, 2024) (further discussion the breach of CF Medical data), https://www.newsbytesapp.com/news/science/comcast-hit-by-massive-data-breach-in-us/story.
[3] Exhibit A, Notification Letter to Plaintiff.

manner such that the attack could be stopped before the cybercriminals could steal Plaintiff's PII. Indeed, these are basic tools that Defendant had a duty to ensure were implemented to protect Plaintiff's PII, which it was responsible for.

6.      Moreover, it is furthermore readily apparent that the debt collection company lacked a reasonable cybersecurity incident response plan and was entirely unprepared for the Data Breach, as is evidenced by the fact that the cyberattack occurred in February and Defendant was unable to determine the scope of the stolen data until July 2024 and even then failed to notify Plaintiff until late September 2024.

7.      Defendant's failure to properly supervise its agent and ensure its agent implement reasonable, industry standard cybersecurity safeguards was negligent at best and likely represents a reckless disregard for Plaintiff's and proposed Class Members legal rights.

**PARTIES**

8.      Plaintiff is a resident and citizen of the State of Pennsylvania.

9.      Defendant is a Delaware limited liability company and lists its principal place of business in Lawrenceville, Georgia.[4]

10.     Defendant CF Medical operates under the name "Capio" and "serves over 1,000 healthcare clients and has managed 61 million patient accounts, returning

---

[4] Office of the Maine Attorney General, *Data Breach Notifications: CF Medical*, https://www.maine.gov/agviewer/content/ag/985235c7-cb95-4be2-8792-a1252b4f8318/da36d572-6a30-4d0c-925b-59aa3f142a6e.html.

approximately $370 million to healthcare providers." Moreover, Defendant has "a workforce of over 298 employees" and "generates an estimated annual revenue of $18 million."[5]

## JURISDICTION AND VENUE

11.    This Court has personal jurisdiction over Defendant because Defendant operates, conducts, engages in, or carries on a business in this State; as is evidenced by the fact that it represented that it was located in this State and District and thus the events and decisions giving rise to this action likely occurred there.

12.    This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d) because this is a class action wherein the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, there are more than one hundred (100) members in the proposed Class, and at least one member of the class is a citizen of a state different from Defendant.

13.    The Court has supplemental jurisdiction over Plaintiff's claims arising under state law under 28 U.S.C. § 1367.

14.    Venue is proper under 28 U.S.C. § 1391(b)(1) and (2) because Defendant resides in this District and a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this district.

---

[5] Mitchel Langley, *CF Medical Announces Data Breach Stemming from FBCS Data Breach*, SECURITY DAILY REVIEW (Oct. 2, 2024), https://dailysecurityreview.com/security-spotlight/cf-medical-announces-data-breach-stemming-from-fbcs-data-breach.

# FACTUAL BACKGROUND

## A. The Data Breach

15.    In February 2024, Defendant's agent experienced a cyberattack that affected Plaintiff's PII, including his Social Security number, though Defendant has not explained the full scope of what data was stolen by the identity thieves.

16.    Apparently before Defendant even noticed that its information systems had been breached, the attackers had time to perform reconnaissance, identity documents containing Plaintiff's and Class Members PII, and exfiltrate that data.

17.    Had Defendant ensured its agent implemented industry standard logging, monitoring, and alerting procedures and technology, Defendant could have prevented this exfiltration.

18.    Instead, the attackers were able to steal valuable data, including Social Security numbers.

19.    Though Defendant has not explained the source of the attack, or the root cause, it is likely that Defendant's cybersecurity program is woefully inadequate and could have prevented or significantly limited the attack if its cybersecurity program had met industry standards.

20.    Indeed, Defendant apparently did not even realize it was being attacked, until the attackers had completed their mission, which provides a strong indication that Defendant had failed to implement standard logging, monitoring, and alerting

systems, such as data loss prevention tools, endpoint detection and response tools, and/or a security information and event management platform.

### B. Plaintiff's Experiences

21.    Plaintiff received a data breach notification letter from Defendant on September 26, 2024. Exhibit A.

22.    The letter failed to include any information regarding the source of the attack or any specific information on what Defendant was doing to prevent such an attack from happening again, other than it involved Defendant's agent debt collection company.

23.    Defendant's notification to Plaintiff and the proposed Class Members warned that they should spent time monitoring their accounts for and credit reports for malicious activity.[6]

24.    At Defendant's direction, Plaintiff suffered monetary harm in the form of spending his valuable time responding to Defendant's Data Breach, including by reviewing his accounts for fraudulent activity and working with his bank to identify and remedy fraudulent activity.

25.    The need to spend this time was not speculative because Plaintiff has

---

[6]    Office of the Vermont Attorney General, *Notice of Data Breach*, https://ago.vermont.gov/sites/ago/files/documents/2024-09-26%20CF%20Medical%20%E2%80%93%20Financial%20Business%20and%20Consumer%20Solutions%20Data%20Breach%20Notice%20to%20Consumers.pdf.

already suffered identify theft in the form of two fraudulent charges on his accounts. Although those charges have been reimbursed, it further shows the harm that Plaintiff must now face because of Defendant's failures to properly supervise its agent, to whom it conveyed the PII that it was responsible for. Moreover, the fraudulent charges required Plaintiff to spend even more time working with his bank to seek reimbursement.

26.    Moreover, the need to spend time and mitigation efforts responding to Defendant's Data Breach was not speculative because the Data Breach included Plaintiff's Social Security number and because Plaintiff was merely performing the tasks that Defendant told him to perform, which Plaintiff believed—and still believes—was necessary given the instructions in Defendant's notification letter and the malicious activity he has already experienced.

27.    Furthermore, the time spent mitigating the effects of Defendant's failures was more significant because Defendant failed to timely information Plaintiff of the Breach, thus requiring Plaintiff to review more account information for fraudulent activity.

28.    Defendant has also experienced an increase in spam calls, messages, and emails since the Data Breach; for example, emails information him that he is approved for credit that he never applied for.

29.    Because of the Data Breach, the uncertainty that it has caused, and

because of the significant invasion of Plaintiff's privacy, Plaintiff has and continues to suffer anxiety and stress.

30.    Plaintiff's and the proposed Class Members' PII was provided to Defendant with the reasonable expectation and mutual understanding that Defendant would comply with their obligations to keep such information confidential and secure from unauthorized access. By failing to do so, Defendant put all Class Members at risk of identity theft, financial fraud, and other harms and caused Plaintiff and Class Members to have to spend their own valuable time responding to Defendant's failures.

31.    Subsequent to the Data Breach, Plaintiff has suffered numerous, substantial injuries including, but not limited to: (i) invasion of privacy; (ii) theft of his PII; (iii) lost or diminished value of PII and PHI; (iv) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (vi) statutory damages; (vii) nominal damages; and (vii) the continued and certainly increased risk to his PII, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PII.

32.     Moreover, Defendant's failures constitute a serious invasion of Plaintiff's and the proposed Class Members privacy, which is a recognized harm by itself and for which the U.S. Supreme Court has noted bears a particularly close resemblance to harms traditionally recognized in American courts.

33.     The Data Breach has caused Plaintiff to suffer fear, anxiety, and stress, which is inherent in data breaches, especially those that expose individuals' Social Security numbers, which has been compounded by the fact that Defendant has still not fully informed his of key details about the Data Breach's occurrence.

34.     Because of the Data Breach, Plaintiff anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach.

35.     Because of the Data Breach, Plaintiff is at a present risk and will continue to be at increased risk of identity theft and fraud for years to come.

36.     Plaintiff has a continuing interest in ensuring that his PII, which, upon information and belief, remains backed up in Defendant's possession, is protected and safeguarded from future breaches.

**C. This Data Breach was Foreseeable by Defendant**

37.     Defendant tortiously failed to take the necessary precautions required to safeguard and protect the PII of Plaintiff and the Class Members from unauthorized disclosure. Defendant's actions represent a flagrant disregard of

Plaintiff's and the other Class Members' rights.

38.     Plaintiff and Class Members were the foreseeable and probable victims of Defendant's inadequate security practices and procedures. Defendant knew or should have known of the inherent risks in collecting and storing PII and the critical importance of providing adequate security for that information.

39.     Cyber-attacks against companies such as Defendant are targeted and frequent. According to Forbes, there were at least 2,365 cyber attacks in 2023 with 343,338964 victims.[7]

40.     According to the Identity Theft Resource Center, the emotional toll of identity crimes is expected to continue to increase such that "assistance providers will struggle to meet the emotional recovery needs of victims." Indeed, the report notes that "[i]dentity crime victimization is too often classified as not creating trauma for which a victim would require support, despite the fact that our latest *Consumer Impact Report* had 16 percent (16%) of respondents state they contemplated suicide as a result of victimization."[8]

41.     The increase in such attacks, and attendant risk of future attacks, was widely known to the public and to anyone bothering to pay attention. According to

---

[7] Mariah St. John, *Cybersecurity Stats: Facts and Figures You Should Know*, FORBES ADVISOR (Feb. 28, 2024, 2:33 PM), https://www.forbes.com/advisor/education/it-and-tech/cybersecurity-statistics.
[8] Identity Theft Resource Center, *2024 Predictions*, https://www.idtheftcenter.org/identity-theft-resource-center-2024-predictions.

IBM's 2022 report, "[f]or 83% of companies, it's not if a data breach will happen, but when."[9]

42.    PII is of great value to hackers and cybercriminals, and the data compromised in the Data Breach can be used for a variety of unlawful and nefarious purposes, including ransomware, fraudulent misuse, sale on the dark web, extortion, financial fraud, and identity theft.

43.    PII can be used to distinguish, identify, or trace an individual's identity, such as their name, Social Security number, and financial records. This can be accomplished alone, or in combination with other personal or identifying information that is connected, or linked to an individual, such as their birthdate, birthplace, and mother's maiden name.

44.    Given the nature of the data collected, and the fact that data breaches are a well-known threat to all companies that store such information, Defendant was on notice of the harms associated with its failure to implement reasonable, industry standard cybersecurity safeguards.

**D. Defendant Failed to Comply with FTC Guidelines and other Industry Standards**

45.    The Federal Trade Commission ("FTC") has promulgated numerous guides for businesses which highlight the importance of implementing reasonable

---

[9] IBM, *Cost of a data breach 2022: A million-dollar race to detect and respond*, https://www.ibm.com/reports/data-breach.

data security practices. According to the FTC, the need for data security should be factored into all business decision-making.

46. In 2016, the FTC updated its publication, *Protecting PII: A Guide for Business*, which establishes cyber-security guidelines for businesses. The guidelines note that businesses should protect the personal customer information that they keep; properly dispose of PII that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct any security problems. The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating someone is attempting to hack the system; watch for large amounts of data being transmitted from the system; and have a response plan ready in the event of a breach.[10]

47. The FTC further recommends that companies not maintain PII longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.[11]

---

[10] *See* Fed. Trade Comm'n, *Protecting PII: A Guide for Business* (October 2016), https://www.bulkorder.ftc.gov/system/files/publications/2_9-00006_716a_protectingpersinfo-508.pdf.
[11] *See id.*

48.    The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

49.    These FTC enforcement actions include actions against entities failing to safeguard PII such as Defendant. *See, e.g.*, *In the Matter of LabMD, Inc., A Corp*, 2016-2 Trade Cas. (CCH) ¶ 79708, 2016 WL 4128215, at *32 (MSNET July 28, 2016) ("[T]he Commission concludes that LabMD's data security practices were unreasonable and constitute an unfair act or practice in violation of Section 5 of the FTC Act.").

50.    Defendant failed to properly implement basic data security practices widely known throughout the industry. Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to customer PII constitutes an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

51.    Defendant was always fully aware of its obligations to protect the PII of Plaintiff and the Class Members. Defendant was also aware of the significant

repercussions that would result from its failure to do so.

52. For example, the FTC notes that companies should maintain central log files, monitor incoming traffic for signs of malicious attempts and activity, and monitoring outgoing traffic to identify signs of data exfiltration.[12] If Defendant had these controls in place, it would have realized that cybercriminals had infiltrated its systems, were performing reconnaissance to identify valuable data, and it likely would have realized that the data was being exfiltrated before it was too late.

53. A number of industry and national best practices have been published and are widely used as a go-to resource when developing an institution's cybersecurity standards.

54. The Center for Internet Security's (CIS) CIS Critical Security Controls (CSC) recommends certain best practices to adequately secure data and prevent cybersecurity attacks, including 18 Critical Security Controls of Inventory and Control of Enterprise Assets, Inventory and Control of Software Assets, Data Protection, Secure Configuration of Enterprise Assets and Software, Account Management, Access Control Management, Continuous Vulnerability Management, Audit Log Management, Email and Web Browser Protections, Malware Defenses, Data Recovery, Network Infrastructure Management, Network Monitoring and Defense, Security Awareness and Skills Training, Service Provider Management,

---

[12] *Id.* at 21–22.

Application Software Security, Incident Response Management, and Penetration Testing.[13]

55.    In addition, the National Institute of Standards and Technology (NIST) recommends certain practices to safeguard systems, *infra,* such as:

- Control who logs on to your network and uses your computers and other devices.

- Use security software to protect data.

- Encrypt sensitive data, at rest and in transit.

- Conduct regular backups of data.

- Update security software regularly, automating those updates if possible.

- Have formal policies for safely disposing of electronic files and old devices.

- Train everyone who uses your computers, devices, and network about cybersecurity. You can help employees understand their personal risk in addition to their crucial role in the workplace.[14]

56.    Further still, the Cybersecurity & Infrastructure Security Agency makes

---

[13]    *See* Rapid7, *CIS Top 18 Critical Security Controls Solutions*, https://www.rapid7.com/solutions/compliance/critical-controls (last accessed July 11, 2024).
[14]    Fed. Trade Comm'n, *Understanding the NIST Cybersecurity Framework*, https://www.ftc.gov/business-guidance/small-businesses/cybersecurity/nist-framework

specific recommendations to organizations to guard against cybersecurity attacks, including (1) reducing the likelihood of a damaging cyber intrusion by validating that "remote access to the organization's network and privileged or administrative access requires multi-factor authentication, [e]nsur[ing] that software is up to date, prioritizing updates that address known exploited vulnerabilities identified by CISA[,] [c]onfirm[ing] that the organization's IT personnel have disabled all ports and protocols that are not essential for business purposes," and other steps; (2) taking steps to quickly detect a potential intrusion, including "[e]nsur[ing] that cybersecurity/IT personnel are focused on identifying and quickly assessing any unexpected or unusual network behavior [and] [e]nabl[ing] logging in order to better investigate issues or events[;] [c]onfirm[ing] that the organization's entire network is protected by antivirus/antimalware software and that signatures in these tools are updated," and (3) "[e]nsur[ing] that the organization is prepared to respond if an intrusion occurs," and other steps.[15]

57.    Upon information and belief, Defendant failed to implement industry-standard cybersecurity measures, including failing to meet the minimum standards of both the NIST Cybersecurity Framework Version 1.1 (including without limitation PR.AC-1, PR.AC-3, PR.AC-4, PR.AC-5, PR.AC-6, PR.AC-7, PR.AT-1,

---

[15] Cybersecurity & Infrastructure Security Agency, *Shields Up: Guidance for Organizations*, https://www.cisa.gov/shields-guidance-organizations.

PR.DS-1, PR.DS-5, PR.PT-1, PR.PT-3, DE.CM-1, DE.CM-4, DE.CM-7, DE.CM-8, and RS.CO-2) and the Center for Internet Security's Critical Security Controls (CIS CSC), which are established frameworks for reasonable cybersecurity readiness, as well as failing to comply with other industry standards for protecting Plaintiff's and the proposed Class Members' PII, resulting in the Data Breach.

**F.      The Data Breach Caused Plaintiff and the Class Members Injury and    Damages**

58.      Plaintiff and members of the proposed Class have suffered injury and damages from the misuse of their PII that can be directly traced to Defendant, that has occurred, is ongoing, and/or imminently will occur.

59.      As stated above, unauthorized cybercriminals stole Plaintiff's and the proposed Class Members' PII, including their Social Security numbers.

60.      The ramifications of Defendant's failure to keep Plaintiff's and the Class's PII secure are severe. Identity theft occurs when someone uses another's personal and financial information such as that person's name or Social Security number, or other information, without permission, to commit fraud or other crimes.

61.      Because Defendant failed to prevent the Data Breach, Plaintiff and the proposed Class Members have suffered, will imminently suffer, and will continue to suffer damages, including monetary losses, lost time, anxiety, and emotional distress. Plaintiff and the Class Members have suffered, will imminently suffer, or are at an

increased risk of suffering:

    a.    Fraudulent misuse of PII;

    b.    Monetary harm in the form of being forced to spend their own valuable time responding to Defendant's failures, including by reviewing their accounts for fraudulent activity and changing financial account information;

    c.    The loss of the opportunity to control how PII is used;

    d.    The compromise and continuing publication of their PII;

    e.    Out-of-pocket expenses associated with the prevention, detection, recovery, and remediation from identity theft or fraud;

    f.    Delay in receipt of tax refund monies;

    g.    Increase in spam texts and telephone calls;

    h.    Unauthorized use of stolen PII; and

    i.    The continued risk to their PII, which remains in the possession of Defendant's possession and control and is subject to further breaches so long as Defendant fails to undertake the appropriate measures to protect the PII in their possession.

62.    Furthermore, the Data Breach has placed Plaintiff and the proposed Class Members at an increased risk of fraud and identity theft.

63.    Just like Defendant's instructions, the FTC recommends that identity

theft victims spend their time and effort on intensive and/or costly tasks designed to help protect their personal and financial information after a data breach, including contacting the company where the fraud occurred and asking them to close or freeze accounts and changing login information; contacting one of the credit bureaus to place a fraud alert on credit files (consider an extended fraud alert that lasts for 7 years if someone steals their identity); reviewing their credit reports; seeking a credit freeze; correcting their credit reports; and other steps such as contacting law enforcement and reporting the identity theft to the FTC.[16]

64.    Identity thieves use stolen PII such as Social Security numbers, which were stolen here, for a variety of crimes, including credit card fraud phone or utilities fraud, and bank/finance fraud.

65.    Identity thieves can also use Social Security numbers to obtain a driver's license or official identification card in the victim's name (to the extent not already stolen in the Data breach) but with the thief's picture; use the victim's name and Social Security number to obtain government benefits; or file a fraudulent tax return using the victim's information.

66.    In addition, identity thieves may obtain a job using the victim's Social Security number, rent a house or receive other services in the victim's name, and may even give the victim's PII to police during an arrest—resulting in an arrest

---

[16] *See* Fed. Trade Comm'n, https://www.identitytheft.gov/Steps (last accessed July 11, 2024).

warrant being issued in the victim's name. That can be even more problematic and difficult to remedy for someone who already has a criminal record.

67.    Moreover, the emotional trauma, stress, and anxiety suffered by Data Breach victims is severe. The fear for the financial future because they are helpless to prevent such harm on their own, some develop eating disorders, and in some cases the emotion toll manifests as post-traumatic stress disorder. Indeed, it is not uncommon for the stress and anxiety created by a data breach to result in physical harm in the form of sleep deprivation. "Being a cybercrime victim can become a vicious cycle. You might be unable to get a full night's sleep because you're worried about your situation. This sleeplessness is due to higher levels of the stress hormones cortisol and adrenaline."[17]

68.    Further, according to the Identity Theft Resource Center's 2021 Consumer Aftermath Report, identity theft victims suffer "staggering" emotional tolls: For example, nearly 30% of victims have been the victim of a previous identity crime; an all-time high number of victims say they have contemplated suicide. 35% reported not having enough money to pay for food and utilities, while 14% were evicted because they couldn't pay rent or their mortgage.  54% percent reported

---

[17] Stanley Clark, *The Psychological Impact on the Lives of Cyber-Attack Victims*, PAINTED BRAIN (Aug. 27, 2023), https://paintedbrain.org/painted-brain-media/blogs/the-psychological-impact-on-the-lives-of-cyber-attack-victims.

feelings of being violated. [18]

69.    It must also be noted there may be a substantial time lag–measured in years–between when breach occurs and when identity theft and financial fraud occurs. Though some victims see immediate fraud on their accounts, others do not because cybercriminals often wait until the victims' credit monitoring service expires to perpetrate their financial crimes.

70.    "For the individual who is a victim of stolen data, this can often lead to headaches: changing passwords frequently, enacting credit freezes or identity monitoring, and so on."[19]

71.    PII are such valuable commodities to identity thieves that once the information has been compromised, criminals often trade the information on the "cyber black-market" for years. This is especially the case here given that the data has at least partially been posted to the dark web already.

72.    Social Security numbers are among the worst kind of PII to have stolen because they may be put to a variety of fraudulent uses and are difficult for an individual to change. The Social Security Administration stresses that the loss of an

---

[18] Jason Steele, *Credit Card and ID Theft Statistics*, CREDITCARDS.COM (June 11, 2021), https://www.creditcards.com/statistics/credit-card-security-id-theft-fraud-statistics-1276 (citing Identity Theft Resource Center, *2021 Consumer Aftermath Report* (May 26, 2021), https://www.idtheftcenter.org/post/the-identity-theft-resource-centers-2021-consumer-aftermath-report-reveals-impacts-on-covid-19-identity-crime-victims).
[19] Center for Internet Security, *How You're Affected by Data Breaches*, https://www.cisecurity.org/insights/blog/how-youre-affected-by-data-breaches (last accessed July 11, 2024).

individual's Social Security number, as is the case here, can lead to identity theft and extensive financial fraud.[20]

73.    For example, the Social Security Administration has warned that identity thieves can use an individual's Social Security number to apply for additional credit lines. Such fraud may go undetected until debt collection calls commence months, or even years, later. Stolen Social Security numbers also make it possible for thieves to file fraudulent tax returns, file for unemployment benefits, or apply for a job using a false identity.[21] Each of these fraudulent activities is difficult to detect. An individual may not know that his or his Social Security number was used to file for unemployment benefits until law enforcement notifies the individual's employer of the suspected fraud. Fraudulent tax returns are typically discovered only when an individual's authentic tax return is rejected.

74.    Moreover, it is not an easy task to change or cancel a stolen Social Security number. An individual cannot obtain a new Social Security number without significant paperwork and evidence of actual misuse. Even then, a new Social Security number may not be effective, as "[t]he credit bureaus and banks are able to link the new number very quickly to the old number, so all of that old bad

_____

[20] *See* U.S. Social Security Admin., *Identity Theft and Your Social Security Number*, Publication No. 05-10064 (July 2021), https://www.ssa.gov/pubs/EN-05-10064.pdf.
[21] *See id.*

information is quickly inherited into the new Social Security number."[22]

75.     This data, as one would expect, demands a much higher price on the black market. Martin Walter, senior director at cybersecurity firm RedSeal, explained, "[c]ompared to credit card information, personally identifiable information and Social Security Numbers are worth more than 10x on the black market."[23]

76.     Accordingly, the Data Breach has caused Plaintiff and the proposed Class Members a greatly increased risk of identity theft and fraud, in addition to the other injuries and damages set forth herein, specifically the unauthorized disclosure, lost time and efforts in remediating the impact of the Data Breach, and other injury and damages as set forth in the preceding paragraphs.

77.     Defendant knew or should have known of these harms which would be caused by the Data Breach that they permitted to occur and strengthened their data systems accordingly.

## CLASS ALLEGATIONS

78.     Plaintiff brings this nationwide class action individually and on behalf

---

[22] Brian Naylor, *Victims of Social Security Number Theft Find It's Hard to Bounce Back*, NPR (Feb. 9, 2015), http://www.npr.org/2015/02/09/384875839/data-stolen-by-anthem-s-hackers-has-millions-worrying-about-identity-theft.
[23] Tim Greene, *Anthem Hack: Personal Data Stolen Sells for 10x Price of Stolen Credit Card Numbers* (Feb. 6, 2015), http://www.networkworld.com/article/2880960/anthem-hack-personal-data-stolen-sells-for-10x-price-of-stolen-credit-card-numbers.html.

of all other persons similarly situated pursuant to Rule 23(a) of the Federal Rules of

Civil Procedure, and Fed. R. Civ. P. 23(b)(3).

79.    Plaintiff proposes the following Class definition ("Nationwide Class"),

subject to amendment based on information obtained through discovery:

> All persons whose PII was compromised because of the
> Data Breach and to whom Defendant and/or its agents sent
> a notification letter.

80.    Plaintiff reserves the right to amend the proposed class definition, as it

learns more about the Data Breach.

81.    Excluded from the Class are Defendant's members, officers, directors,

and employees; any entity in which Defendant has a controlling interest; and the

affiliates, legal representatives, attorneys, successors, heirs, and assigns of

Defendant. Excluded also from the Class are members of the judiciary to whom this

case is assigned, their families, and members of their staff.

82.    Certification of Plaintiff's claims for class-wide treatment is

appropriate because Plaintiff can prove the elements of Class Members' claims on a

class-wide basis using the same evidence as would be used to prove those elements

in individual actions alleging the same claims for each Class Member.

83.    This action satisfies the requirements for a class action under Fed. R.

Civ. P. 23(a)(1)-(3) and Fed. R. Civ. P. 23(b)(2), including requirements of

numerosity, commonality, typicality, adequacy, predominance, and superiority.

84.    **Numerosity, Fed. R. Civ. P. 23(a)(1):** The members of the Class are so numerous that joinder of all of them is impracticable. For example, Defendant has reported that the Data Breach included the information of 626,396 individuals, easily exceeding the minimum number.

85.    **Commonality, Fed. Civ. Proc. 23(a)(2), and Predominance, Fed. R. Civ. Proc. 23(b)(3):** There are numerous questions of law and fact common to the Class. As such, there is a well-defined community of interest among the Members of the Class. These questions predominate over questions that may affect only individual Class Members because Defendant has acted on grounds generally applicable to the Class. Such common legal or factual questions include, but are not limited to:

a.    Whether Defendant unlawfully used, maintained, lost, or disclosed Plaintiff's and Class Members' PII;

b.    Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

c.    Whether Defendant's data security systems prior to and during the Data Breach were consistent with industry standards;

d.    Whether Defendant's data security systems prior to and during the Data Breach complied with applicable data security laws and regulations including,

*e.g.*, the FTC Act;

e.     Whether computer hackers obtained Plaintiff's and Class Members' PII in the Data Breach;

f.     Whether Defendant knew or should have known that their data security systems and monitoring processes were deficient;

g.     Whether Defendant failed to adequately respond to the Data Breach, including failing to timely notify the Plaintiff and the Class Members;

h.     Whether Defendant's failures amounted to negligence;

i.     Whether Defendant breached their contractual promises;

j.     Whether Defendant were unjustly enriched;

k.     Whether Defendant intruded into the private affairs of Plaintiff and the proposed Class Members;

l.     Whether Plaintiff and the Class Members suffered legally cognizable damages as a result of Defendant's misconduct;

m.     Whether Defendant's acts violated the law, and;

n.     Whether Plaintiff and the Class Members are entitled to damages including compensatory and punitive damages, and/or injunctive relief.

86.     **Typicality, Fed. R. Civ. P. 23(a)(3):** The claims or defenses of Plaintiff are typical of the claims or defenses of the proposed Class because Plaintiff's claims are based upon the same legal theories and same violations of law. Plaintiffs' claims

are typical of those of other Class Members because Plaintiff's PII, like that of every other Class Member, was compromised in the Data Breach, and all arise from the same set of facts regarding Defendant's failures:

a.    to protect Plaintiff's and Class Members' PII;

b.    to discover and remediate the Breach of its computer systems more quickly; and

c.    to disclose to Plaintiff and Class Members in a complete and timely manner information concerning the security breach and the theft of their Personal Information.

87.    **Adequacy, Fed. R. Civ. P. 23(a)(4):** Plaintiff will fairly and adequately represent and protect the interests of the members of the Class. Plaintiff's Counsel are competent and experienced in litigating class actions.

88.    **Superiority, Fed. R. Civ. P. 23(b)(3):** A class action is a superior method for the fair and efficient adjudication of this controversy because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy, and joinder of the Class Members is otherwise impracticable. Class treatment presents a superior mechanism for fairly resolving similar issues and claims without repetitive and wasteful litigation for many reasons, including the following:

a.    It would be a substantial hardship for most individual members of the

Class if they were forced to prosecute individual actions. Many members of the Class are not in the position to incur the expense and hardship of retaining their own counsel to prosecute individual actions, which in any event might cause inconsistent results.

b.      When the liability of Defendant has been adjudicated, the Court will be able to determine the claims of all members of the Class. This will promote global relief and judicial efficiency in that the liability of Defendant to all Class Members, in terms of money damages due and in terms of equitable relief, can be determined in this single proceeding rather than in multiple, individual proceedings where there will be a risk of inconsistent and varying results.

c.      A class action will permit an orderly and expeditious administration of the Class claims, foster economies of time, effort, and expense, and ensure uniformity of decisions. If Class Members are forced to bring individual suits, the transactional costs, including those incurred by Defendant, will increase dramatically, and the courts will be clogged with a multiplicity of lawsuits concerning the very same subject matter, with identical fact patterns and the same legal issues. A class action will promote a global resolution and will promote uniformity of relief as to the Class Members and as to Defendant.

d.      This lawsuit presents no difficulties that would impede its management

by the Court as a class action. The class certification issues can be easily determined because the Class includes only Defendant's client's customers, the legal and factual issues are narrow and easily defined, and the Class membership is limited. The Class does not contain so many persons that would make the Class notice procedures unworkable or overly expensive. The identity of the Class Members can be identified from Defendant's records, such that direct notice to the Class Members would be appropriate.

89.    **Injunctive and Declaratory Relief, Fed. R. Civ. Proc. 23(b)(2):** In addition, Defendant has acted on grounds that apply generally to the Class as a whole, so that class certification, injunctive relief, and corresponding declaratory relief are appropriate on a class-wide basis.

90.    Finally, all members of the proposed Class are readily ascertainable. Defendant has access to Class Members' names and addresses affected by the Data Breach. Class Members have already been preliminarily identified and sent notice of the Data Breach by Defendant.

<u>**COUNT I**</u>
**NEGLIGENCE and NEGLIGENCE PER SE**
**(On Behalf of Plaintiff and the Class)**

91.    Plaintiff re-alleges and incorporates by reference all paragraphs above as if fully set forth herein.

92.    Defendant collected the PII of Plaintiff and the proposed Class

Members and conveyed that information to its agent to be stored in its information systems.

93.    Defendant had full knowledge of the sensitivity of the PII to which they were entrusted, and the types of harm that Plaintiff and the Class Members could and would suffer if the PII was wrongfully disclosed to unauthorized persons. Defendant had a duty to Plaintiff and each Class Member to exercise reasonable care in holding, safeguarding, and protecting that information, including by implementing logging, monitoring, and alerting systems sufficient to identify when malicious actors were performing reconnaissance activities and exfiltrating data.

94.    Plaintiff and the Class Members were the foreseeable victims of any inadequate safety and security practices. Plaintiff and the Class Members had no ability to protect their data in Defendant's possession.

95.    By collecting and storing this data in their computer systems, Defendant had a duty of care to use reasonable means to secure and safeguard it, to prevent disclosure of the information, and to safeguard the information from theft. Defendant's duty included a responsibility to implement processes by which it could detect if that PII was exposed to the internet and to give prompt notice to those affected in the case of a data breach. That duty furthermore included the obligation to ensure any entities to whom it conveyed the PII adhered to the same standards.

96.    Defendant owed a common law duty of care to Plaintiff and the Class

Members to provide adequate data security consistent with industry standards and other requirements discussed herein, and to ensure that their systems and networks, and the personnel responsible for them, adequately protected the PII.

97.     In addition, Defendant had a duty to employ reasonable security measures under Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect confidential data.

98.     Indeed, the FTC Act is both a basis for Defendant's negligence per se and anyway informs the standard of care that Defendant was required to act with.

99.     Defendant breached its duties, and were negligent, by acts of omission or commission, by failing to use reasonable measures to protect the Plaintiff's and Class Members' PII. The specific negligent acts and omissions committed by Defendant include, but are not limited to, the following:

a.     Failing to adopt, implement, and maintain adequate security measures to safeguard Plaintiff's and Class Members' PII;

b.     Failing to adequately train employees on proper cybersecurity protocols;

c.     Failing to adequately monitor the security of their networks and systems;

31

d.     Failure to periodically ensure that their network system had plans in place to maintain reasonable data security safeguards;

e.     Allowing unauthorized access to Plaintiff's and Class Members' PII;

f.     Failing to timely notify Plaintiff and Class Members about the Data Breach so that they could take timely and appropriate steps to mitigate the potential for identity theft and other damages; and

g.     Failing to supervise its agent to whom it conveyed the PII.

100.   It was foreseeable that Defendant's failure to use reasonable measures to protect Plaintiff's and Class Members' PII, and to ensure its agents protected the same, would result in injury to Plaintiff and Class Members. Further, the breach of security was reasonably foreseeable given the known high frequency of cyberattacks and data breaches in the industry.

101.   It was therefore foreseeable that the failure to adequately safeguard Plaintiff's and Class Members' PII would result in one or more types of injuries to them.

102.   As a direct and proximate result of Defendant's negligence set forth in the preceding paragraphs, Plaintiff and Class Members have suffered injury and damages as set forth herein, including but not limited to fraudulent misuse of their PII; loss of the opportunity to control how their PII is used; diminution in value of their PII; compromise and continuing publication of their PII; and are entitled to

compensatory, actual, and punitive damages as a result of the Data Breach.

103.    Plaintiff and Class Members are also entitled to injunctive relief requiring Defendant to (i) strengthen their data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; (iii) institute additional protocol for vendor management; and (iv) continue to provide adequate credit monitoring to all Class Members.

## COUNT II
## BREACH OF IMPLIED CONTRACT
### (On behalf of Plaintiff and the Class)

104.    Plaintiff re-alleges and incorporates by reference all paragraphs above as if fully set forth herein.

105.    Defendant required Plaintiff and Class Members to provide and entrust their PII to Defendant as a condition of obtaining services from Defendant.

106.    When Plaintiff and Class Members allowed Defendant to maintain their PII, they entered into implied contracts with Defendant pursuant to which Defendant agreed to safeguard and protect such PII and to timely and accurately notify Plaintiff and Class Members if and when their PII was breached and compromised.

107.    Specifically, Plaintiff and Class Members entered into valid and enforceable implied contracts with Defendant when they agreed to provide their PII.

108.    The valid and enforceable implied contracts that Plaintiff and Class Members entered into with Defendant included Defendant's promises to protect PII

it collected from Plaintiff and Class Members, or created on its own, from unauthorized disclosures. Plaintiff and Class Members provided this PII in reliance on Defendant's promises.

109. Under the implied contracts, Defendant promised and was obligated to (a) provide services to Plaintiff and Class Members; and (b) protect Plaintiff's and Class Members' PII provided to obtain such services and/or created in connection therewith. In exchange, Plaintiff and Class Members agreed to provide Defendant with payment and their PII.

110. Defendant promised and warranted to Plaintiff and Class Members to maintain the privacy and confidentiality of the PII it collected from Plaintiff and Class Members and to keep such information safeguarded against unauthorized access and disclosure.

111. Defendant's adequate protection of Plaintiff's and Class Members' PII was a material aspect of these implied contracts with Defendant.

112. Defendant solicited and invited Plaintiff and Class Members to provide their PII as part of Defendant's regular business practices. Plaintiff and Class Members accepted Defendant's offers and provided their PII to Defendant.

113. In entering into such implied contracts, Plaintiff and Class Members reasonably believed and expected that Defendant's data security practices complied with industry standards and relevant laws and regulations, including the FTC Act.

114.    Plaintiff and Class Members who contracted with Defendant for services and provided their PII to Defendant reasonably believed and expected that Defendant would adequately employ adequate data security to protect that PII. Defendant failed to do so.

115.    A meeting of the minds occurred when Plaintiff and Class Members agreed to, and did, provide their PII to Defendant and agreed Defendant would receive payment for, amongst other things, the protection of their PII.

116.    Plaintiff and Class Members performed their obligations under the contracts when they provided their PII and/or payment to Defendant.

117.    Defendant materially breached its contractual obligations to protect the PII it required Plaintiff and Class Members to provide when that PII was unauthorizedly disclosed in the Data Breach due to Defendant's inadequate data security measures and procedures.

118.    Defendant materially breached its contractual obligations to deal in good faith with Plaintiff and Class Members when it failed to take adequate precautions to prevent the Data Breach and failed to promptly notify Plaintiff and Class Members of the Data Breach.

119.    Defendant materially breached the terms of its implied contracts, including but not limited to by failing to comply with industry standards or the standards of conduct embodied in statutes like Section 5 of the FTC Act, by failing

to otherwise protect Plaintiff's and Class Members' PII, and/or by failing to prevent the same data security failures by its vendor that handled PII, as set forth *supra*.

120. The Data Breach was a reasonably foreseeable consequence of Defendant's conduct, by acts of omission or commission, in breach of these implied contracts with Plaintiff and Class Members.

121. As a result of Defendant's failure to fulfill the data security protections promised in these contracts, Plaintiff and Class Members did not receive the full benefit of their bargains with Defendant, and instead received services of a diminished value compared to that described in the implied contracts. Plaintiff and Class Members were therefore damaged in an amount at least equal to the difference in the value of the services with data security protection they paid for and that which they received.

122. Had Defendant disclosed that its data security procedures were inadequate or that it did not adhere to industry-standard for cybersecurity, neither Plaintiff, Class Members, nor any reasonable person would have contracted with Defendant.

123. Plaintiff and Class Members would not have provided and entrusted their PII to Defendant in the absence of the implied contracts between them and Defendant.

124. Plaintiff and Class Members fully performed their obligations under the

implied contracts with Defendant.

125.   Defendant breached the implied contracts it made with Plaintiff and Class Members by failing to safeguard and protect their PII and by failing to provide timely or adequate notice that their PII was compromised in and due to the Data Breach.

126.   As a direct and proximate result of Defendant's breach of its implied contracts with Plaintiff and Class Members and the attendant Data Breach, Plaintiff and Class Members have suffered injuries and damages as set forth herein and have been irreparably harmed, as well as suffering and the loss of the benefit of the bargain they struck with Defendant.

127.   Plaintiff and Class Members are entitled to damages, including compensatory, punitive, and/or nominal damages, and/or restitution, in an amount to be proven at trial.

128.   Plaintiff and Class Members are also entitled to injunctive relief requiring Defendant to, *e.g*., (a) strengthen its data security systems and monitoring procedures; (b) conduct annual audits of its vendor's data security systems and monitoring procedures; and (c) provide adequate lifetime credit monitoring to all Class Members.

## COUNT III:
## INVASION OF PRIVACY
### (On behalf of Plaintiff and the Class)

129.    Plaintiff re-alleges and incorporates by reference the above paragraphs as if fully set forth herein.

130.    Plaintiff and Class Members had a legitimate expectation of privacy to their PII and were entitled to Defendant's protection of this PII in its control against disclosure to unauthorized third parties.

131.    Defendant owed a duty to its customers, including Plaintiff and Class Members, to keep their PII confidential and secure.

132.    Defendant failed to protect Plaintiff's and Class Members' PII and instead caused it to be accessed and exposed to unauthorized persons.

133.    Defendant allowed unauthorized third parties access to and examination of the PII of Plaintiff and Class Members, by way of Defendant's failure to protect the PII through reasonable data security measures.

134.    The unauthorized release to, custody of, and examination by unauthorized third parties of the PII of Plaintiff and Class Members is highly offensive to a reasonable person and represents an intrusion upon Plaintiff's and Class Members' seclusion as well as a public disclosure of private facts.

135.    The intrusion was into a place or thing, which was private and is entitled to be private. Plaintiff and Class Members disclosed their PII to Defendant as a

condition of and in exchange for receiving services, but privately with an intention that the PII would be kept confidential and protected from unauthorized disclosure. Plaintiff and Class Members were reasonable in their belief that such information would be kept private and would not be disclosed without their authorization.

136. The Data Breach constitutes an intentional or reckless interference by Defendant with Plaintiff's and Class Members' interests in solitude or seclusion, as to their persons or as to their private affairs or concerns, of a kind that would be highly offensive to a reasonable person.

137. Defendant acted with a knowing state of mind when it permitted the Data Breach to occur and/or when it decided against implementing the appropriate cybersecurity measures and oversight, because it had actual knowledge that its diligence and oversight of its vendors' information security practices were inadequate and insufficient to protect Plaintiff' and Class Members' PII from unauthorized disclosure.

138. Defendant acted with reckless disregard for Plaintiff' and Class Members' privacy when it caused their PII to be shared, used, and stored without adequate protections, allowing cybercriminals to access and take Plaintiff's and Class Members' PII in the Data Breach.

139. Defendant was aware of the potential of a data breach and failed to adequately vet, audit, or oversee its network systems or implement appropriate

policies to prevent the unauthorized release of Plaintiff' and Class Members' PII to cybercriminals.

140.   Moreover, Defendant acted with substantial certainty that its failures would lead to the harms that in fact resulted because it knew of the ubiquity of data breaches and the harms they cause and still failed to properly supervise its agent or to implement the reasonable safeguards necessary to prevent the invasion of privacy.

141.   Because Defendant acted with this knowing state of mind, it had notice and knew that its inadequate and insufficient information security practices would cause injury and harm to Plaintiff and Class Members.

142.   Furthermore, the publication was made to a substantial portion of the public or with substantial certainty that the data would be accessible by a large portion of the public. Indeed, the modus operandi of cybercriminals is to share the data with thousands of people who are in a special relationship with Plaintiff and the members of the proposed Class in that Defendant knows these individuals are of the exact type whose job it is to misuse that data.

143.   As a direct and proximate result of Defendant's acts and omissions set forth above, Plaintiff' and Class Members' PII was disclosed to third parties without authorization, causing Plaintiff and Class Members to suffer injuries and damages including, without limitation, (a) invasion of privacy; (b) lost or diminished value of their PII; (c) out-of-pocket and lost opportunity costs associated with attempting to

mitigate the actual consequences of the Data Breach, including but not limited to lost time; (d) loss of benefit of the bargain; and (e) the continued and certainly increased risk to their PII, which remains in Defendant's control and its vendors' possession in unencrypted form and subject to further unauthorized disclosures, so long as Defendant fails to undertake appropriate and adequate measures to protect it.

144. Unless and until enjoined and restrained by order of this Court, Defendant's wrongful conduct will continue to cause great and irreparable injury to Plaintiff and Class Members in that the PII maintained by Defendant can be viewed, distributed, and used by unauthorized persons for years to come. Plaintiff and Class Members have no adequate remedy at law for the injuries in that a judgment for monetary damages will not end the invasion of privacy for Plaintiff and Class Members.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on all others similarly situated, prays for judgment as follows:

A. An Order certifying this case as a class action on behalf of Plaintiff and the proposed Class, appointing Plaintiff as class representative, and appointing his counsel to represent the Class;

B. Awarding Plaintiff and the Class damages that include applicable

compensatory, actual, statutory, nominal, exemplary, and punitive damages, as allowed by law;

C.      Awarding restitution and damages to Plaintiff and the Class in an amount to be determined at trial;

D.      Awarding declaratory and other equitable relief as is necessary to protect the interests of Plaintiff and the Class;

E.      Awarding injunctive relief in the form of additional technical and administrative cybersecurity controls as is necessary to protect the interests of Plaintiff and the Class;

F.      Enjoining Defendant from further deceptive practices and making untrue statements about its data security, the Data Breach, and the transmitted PII;

G.      Awarding attorneys' fees and costs, as allowed by law;

H.      Awarding pre- and post-judgment interest, as provided by law; and

I.      Awarding such further relief to which Plaintiff and the Class are entitled.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all issues to triable.

Dated: October 10, 2024                    Respectfully submitted,

                                           */s/ Joseph B. Alonso*
                                           Joseph B. Alonso

GA Bar No. 013627
Daniel H. Wirth
GA Bar No. 873443
**ALONSO & WIRTH**
1708 Peachtree Street, Suite 303
Atlanta, GA 30309
(678) 928-4472
jalonso@alonsowirth.com
dwirth@alonsowirth.com

J. Gerard Stranch, IV
Grayson Wells
**STRANCH, JENNINGS & GARVEY, PLLC**
The Freedom Center
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
Tel: (615) 254-8801
gstranch@stranchlaw.com
gwells@stranchlaw.com

***Counsel for Plaintiff and the Proposed Class***

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1D, the attached pleading complies with the font and point selections prescribed by Local Rule 5.1B and uses 14 point Times New Roman Font.

<u>*/s/ Joseph B. Alonso*</u>
Joseph B. Alonso
Georgia Bar No. 013627